UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH LOWE,

        Plaintiff,

   v.

FIG & OLIVE USA INC.,
A Delaware Corporation, d/b/a Fig & Olive,
2711 Centerville Road
Wilmington, DE  19808

        Defendant.

**COMPLAINT AND
DEMAND FOR JURY
TRIAL**

---

Plaintiff Elizabeth Lowe, for her Complaint against the Defendant states and alleges as follows:

### PARTIES

1.    Plaintiff ELIZABETH LOWE is a resident of the District of Columbia.

2.    Defendant FIG & OLIVE USA INC. (hereafter "Fig & Olive") is a corporation organized and existing under the laws of the State of Delaware with its corporate headquarters and principal place of business located in New York, New York.

3.    Fig & Olive's registered agent for service is Corporation Service Company 2711 Centerville Road, Wilmington, Delaware, 19808.

4.     Fig & Olive operates a number of fine dining restaurants in several states, including restaurants located at 934 Palmer Alley NW, Washington, DC 20001 and 8490 Melrose Place, West Hollywood, CA 90069.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(c) because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiff and Defendant.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to the claims asserted occurred in this district.

## FACTUAL ALLEGATIONS
### *Salmonella* Enteritidis and the Outbreak

7.     *Salmonella* is a bacterium that occurs in humans and other animals and is shed in their feces.

8.     When *Salmonella* is ingested by humans, it can cause severe gastroenteritis called salmonellosis.  Symptoms of salmonellosis include nausea, vomiting, diarrhea, and abdominal pain.  Headache, myalgia, and low-grade fever may also accompany salmonellosis.

9.     Symptoms typically develop within 6 to 72 hours after contaminated food or water is ingested.  Symptoms usually last for several days, but severe cases can last much longer and result in serious medical complications.

10.     When severe infection occurs, *Salmonella* may spread from the intestines to the bloodstream and then to other body sites, which can result in death.  Infants, the elderly, and those with impaired immune systems are more likely than others to develop severe acute illness.

11.     Salmonellosis can also result in a variety of well-documented long-term health issues, including reactive arthritis (Reiter's syndrome), inflammatory bowel syndrome, and immunological deficiencies.

12.     Because of the severe health risks and the significant public health costs posed by *Salmonella*, the Centers for Disease Control ("CDC") in conjunction with state health departments actively monitor *Salmonella* cases throughout the country to identify illness-causing foods and stop outbreaks.

13.     State and CDC labs routinely perform testing on *Salmonella* samples that identify the *Salmonella* bacteria's serotype and perform a further genetic subtyping process known as Pulsed-Field Gel Electrophoresis ("PFGE"). The PFGE results—akin to genetic fingerprints—are then loaded into a national database where they are easily compared to each other.

14.     This system alerts the CDC when the number of *Salmonella* cases spikes or when a group of *Salmonella* cases are caused by the same, or closely related, genetic strain of the bacteria.  The CDC then investigates those cases as a single-source outbreak.

15.     In early September of 2015, the Washington, DC Department of Health noticed a spike in *Salmonella* Enteritidis infections.

16.     Further investigation by the Washington, DC Department of Health discovered a strong correlation with eating at the Fig & Olive restaurant located at 934 Palmer Alley NW, Washington DC, 20001 in the several days prior to illness onset.

17.     Further investigation by the Department of Health found a statistically significant correlation with illness and eating foods containing truffle oil.

18.     At least 135 individuals reported becoming ill after eating at Washington, DC Fig & Olive location.  At least 14 individuals have tested positive for *Salmonella*.

19.     An inspection of the restaurant found several critical food-safety violations.

20.     The Washington, DC Fig & Olive closed for 6 days during the outbreak investigation.  During this time all food was discarded and employees received food-safety training.

21.     The restaurant reopened, but removed items from the menu containing truffle oil.

22.     In late September of 2015, a cluster of genetically indistinguishable *Salmonella* Enteritidis infections were linked to dining at the Fig & Olive restaurant located at 8490 Melrose Place, West Hollywood, CA 90069.

23.     Investigation by the Los Angeles County Department of Public Health found at least six confirmed cases of *Salmonella* Enteritidis in patrons, and three in employees.

24.     On information and belief, the *Salmonella* isolated from employees and patrons of the West Los Angeles Fig & Olive was a genetic match to the Washington, DC Fig & Olive outbreak.

25.     Los Angeles County Department of Public Health is investigating hundreds of additional illnesses in patrons that dined at the West Los Angeles Fig & Olive.

26.     The West Los Angeles *Salmonella* outbreak was again linked to foods containing truffle oil.

27.     The Centers for Disease Control is now investigating the size and scope of the national outbreak.

28.     At least two weddings were hosted by the West Los Angeles Fig & Olive restaurant during the outbreak period.  Individuals from both weddings reported severe gastrointestinal illness shortly after attending the weddings and consuming food at the West Los Angeles Fig & Olive.

29.     On information and belief, Fig & Olive manufacturers its own truffle oil.

**<u>Elizabeth Lowe's Illness</u>**

30.     Plaintiff Elizabeth Lowe dined at Fig and Olive restaurant located at 934 Palmer Alley NW, Washington DC on August 31, 2015.

5

31.    While at the restaurant, Ms. Lowe consumed croquettes containing truffle oil.

32.    On or about September 2, 2015, Ms. Lowe became violently ill with gastroenteritis.

33.    On September 5, 2015 Ms. Lowe sought medical treatment at the Washington Hospital Center.

34.    After several more days of debilitating illness, Ms. Lowe sought treatment at Sibley Memorial Hospital.

35.    Ms. Lowe's condition was so dire she was admitted to Sibley Memorial Hospital.  She remained hospitalized for four days.

36.    While at the hospital, Ms. Lowe tested positive for *Salmonella.*

37.    Further testing found Ms. Lowe was positive for *Salmonella* Enteritidis that was a genetic match to the Fig & Olive outbreak strain.

38.    Ms. Lowe missed significant time from work, and incurred significant medical expenses.

39.    Ms. Lowe is continuing to recover and requires continuing medical treatment.

40.    As a direct and proximate result of consuming contaminated food manufactured and prepared by Defendant Fig & Olive, Ms. Lowe contracted severe salmonellosis; suffered through painful and debilitating gastrointestinal symptoms; incurred and will continue to incur medical, pharmacy and hospital

expenses; lost income; and sustained other injuries and damages as proved through discovery and trial.

## COUNT I – STRICT PRODUCT LIABILITY – MANUFACTURING DEFECT

41.     Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

42.     Defendant Fig & Olive manufactured, processed, distributed, marketed and sold adulterated food that caused Elizabeth Lowe's illness.

43.     The food consumed by Elizabeth Lowe was contaminated with *Salmonella* when it left the control of Defendant Fig & Olive.

44.     Elizabeth Lowe's consumption of the contaminated food caused her to become infected with *Salmonella* and develop salmonellosis.

45.     Food contaminated with *Salmonella* is dangerous if eaten and is particularly dangerous to children, the elderly, and anyone with a compromised immune system.

46.     Because *Salmonella* is colorless and odorless, consumers like Elizabeth Lowe have no way of detecting the contamination.

47.     The food purchased and consumed by Elizabeth Lowe was contaminated with *Salmonella* and was therefore defective and unreasonably dangerous to ordinary consumers.

48.     The food lacked any warning whatsoever to consumers.

49.     Fig & Olive is strictly liable to the Plaintiff for the harm proximately caused by the manufacture and sale of its dangerous and defective food and for its failure to warn of foreseeable risks to ordinary consumers.

50.     As a result of Defendant Fig & Olive's production and sale of a defectively manufactured product and failure to warn, Plaintiff sustained injuries and damages set forth in the preceding paragraphs.

## COUNT II – NEGLIGENCE

51.     Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

52.     Fig & Olive manufactured, processed, distributed, marketed, and sold food that was contaminated with *Salmonella*, a deadly pathogen.

53.     Fig & Olive owed a duty to all persons who consumed its products, including Plaintiff, to prepare, manufacture and sell food that was safe to eat, that were not adulterated with deadly pathogens like *Salmonella*, and that was not produced in violation of applicable food safety regulations and industry standards.

54.     Fig & Olive breached the duties owed to the consumers of its food by committing the following negligent acts and omissions:

> a.  Failing to adequately maintain and monitor the safety of its products, premises, equipment and employees;
>
> b.  Failing to properly operate its restaurants and other food manufacturing facilities and equipment in a safe, clean, and sanitary manner;

c.  Failing to adopt, implement, and follow adequate food safety policies and procedures, specifically policies and procedures designed to prevent contamination of ready-to-eat infused oil;

d.  Failing to apply its food safety policies and procedures to ensure the safety and sanitary conditions of its food products, premises, and employees;

e.  Failing to adopt, implement, and validate food safety policies and procedures that met industry standards for the safe and sanitary production of ready-to-eat infused oil;

f.  Failing to prevent the transmission of *Salmonella* to consumers of its food;

g.  Failing to properly train its employees and agents how to prevent the transmission of *Salmonella*;

h.  Failing to properly supervise its employees and agents to prevent the transmission of *Salmonella*; and

i.  Other acts and omissions as proven through discovery and trial.

55.  Elizabeth Lowe's injuries are a direct and proximate result of the negligence of Defendant Fig & Olive.

56.  As a result of Defendant Fig & Olive's negligence, Plaintiff sustained the injuries and damages set forth in the preceding paragraphs.

## COUNT III – NEGLIGENCE PER SE (21 U.S.C. § 331)

57.  Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

58.  Defendant Fig & Olive, its employees, agents, or those working on its behalf, as providers of food products in the United States of America, owe a duty to comply with 21 U.S.C. § 331, which states:

The following acts and the causing thereof are prohibited:

a.  The introduction or delivery for introduction into interstate commerce of any    food    that    is adulterated;

b.  The receipt in interstate commerce of any food that is adulterated, and the delivery or proffered delivery thereof for pay or otherwise….

59.  Fig & Olive, its employees, agents, or those working on its behalf, failed to comply with U.S.C. § 331. Such conduct constitutes negligence *per se*.

60.  As a result of the failure of Defendant Fig & Olive, its employees, agents, or those working on its behalf, to comply with 21 U.S.C. § 331, Plaintiff sustained damages as set forth in the preceding paragraphs.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays judgment against the Defendant in an amount greater than Seventy-Five Thousand Dollars ($75,000.00) together with pre- and post-judgement interest, costs, and disbursements incurred herein and such other relief as the court may find just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

Respectfully Submitted,

BERTRAM & AMELL, PLLC

By:    /s/ Catherine D. Bertram
        Catherine D. Bertram #425052
        bertram@bertramamell.com
        Megan Gibson  #1021191
        mgibson@bertramamell.com
        1666  Connecticut Avenue, N.W.
        Suite 250
        Washington, D.C.  20009
        (202) 803-5800
        (202) 803-6814  fax
        *Attorneys for Plaintiff*